Scott Hervey, State Bar No. 180188
Scott M. Plamondon, State Bar No. 212294
**weintraub** genshlea chediak
a law corporation
400 Capitol Mall, 11th Floor
Sacramento, CA  95814
(916) 558-6000 – Main
(916) 446-1611 – Facsimile

Attorneys for Plaintiff
Camelot Distribution Group, Inc.

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CAMELOT DISTRIBUTION GROUP, INC., <br><br>   Plaintiff, <br><br> vs. <br><br> DOES 1 through 5865, inclusive, <br><br>   Defendants. | Case No.:  CV11-01949 DDP (FMOx) <br><br> **PLAINTIFF CAMELOT DISTRIBUTION GROUP, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR EXPEDITED DISCOVERY** <br><br> Hearing Date: March 16, 2011 <br> Time: 10:00 a.m. <br> Place: 312 N. Spring St. <br> Los Angeles, CA 90012 |

### I.   FACTUAL BACKGROUND

Camelot commenced this action by filing a complaint on March 7, 2011.  See Declaration of Scott M. Plamondon ("Plamondon Dec."), ¶2.  Plaintiff Camelot Distribution Group, Inc. ("Camelot" or "Plaintiff") is the exclusive United States distributor of the motion picture titled *Nude Nuns With Big Guns* (the "Motion Picture").  The Defendants, and each of them, engaged in the distribution of the Motion Picture via one or more peer to peer ("P2P") networks through the use of software which operates using the BitTorrent protocol.  See Plamondon Dec. ¶3.

1  The BitTorrent protocol is a digital communications protocol capable of enabling users to distribute large files without placing a heavy load on the source computer and network. Rather than downloading a file from a single source, the BitTorrent protocol allows users to join a "swarm" comprised of multiple users hosting data on their personal computer to download and upload data from each other simultaneously. A user who wants to make a file available that is not already on this type of P2P system will first create a small *torrent* descriptor file which is then distributed by conventional means (web, email, etc.). He then makes a complete copy of the file itself available through a BitTorrent node. This original complete copy is known as a *seed*. Those who have acquired the torrent descriptor file can give it to their own BitTorrent nodes which, acting as *peers*, download it by connecting to the seed and/or other peers. The file is then distributed by dividing it into segments called *pieces*. As each peer receives a new piece of the file, that peer becomes a source of that piece to other peers, relieving the original seed from having to send a copy to every peer. *See* Plamondon Dec.¶ .

With BitTorrent, the task of distributing the file is shared by those who want it. Using the BitTorrent protocol it is possible for the seed to send only a single copy of the file itself to an unlimited number of peers. When a peer completely downloads a file, it becomes an additional seed. This eventual shift from peers to seeders determines the overall "health" of the file (as determined by the number of times a file is available in its complete form). This distributed nature of BitTorrent leads to a flood-like spreading of a file throughout peers. As more peers join the swarm, the downloading speed and the likelihood of a successful download increases. Relative to standard Internet hosting, use of the BitTorrent protocol provides a significant reduction in the original distributor's hardware and bandwidth resource costs. It also provides redundancy against system problems, reduces dependence on the original distributor and provides a source for the file which is generally temporary and therefore harder to trace than when provided by the enduring availability of a host in standard file distribution techniques. *See* Plamondon Dec. ¶5.

The true names of Defendants are unknown to the Plaintiff at this time. Each Defendant

**weintraub** genshlea chediak
LAW CORPORATION

1  is known to the Plaintiff only by the Internet Protocol ("IP") address assigned to that Defendant
2  by his or her Internet Service Provider on the date and at the time at which the infringing activity
3  of each Defendant was observed.  See Plamondon Dec. ¶6 (Exhibit B).
4      Plaintiff seeks an order granting expedited discovery in order to serve Rule 45
5  subpoenas on the ISP's directed toward allowing Plaintiff to discover information relating to
6  each DOE Defendant including name, current (and permanent) addresses, telephone numbers,
7  and email addresses, to permit the Plaintiff to amend its Complaint to state the true name of
8  each Defendant, and to meet and confer pursuant to Fed. Rule Civ. Proc. 26(f).

## II.  ARGUMENT

### A.  Courts Have Broad Discretion With Respect To Discovery

Courts have broad discretion with respect to discovery, and the Federal Rules of Civil Procedure expressly recognize and provide that courts may expedite discovery.  *See Ellsworth Assoc., Inc. v. United States,* 917 F. Supp. 841, 844 (D.D.C. 1996); *Pod-Ners, LLC v. N. Feed & Bean of Lucerne, Ltd. Liab. Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002) ("Rule 26(d), Fed.R.Civ.P., allows [a court] to order expedited discovery…").  Likewise, Federal Rule of Civil Procedure 34 provides, in regard to document requests, that, "A shorter or longer time may… be ordered by the court.  Fed.R.Civ.P. 34(b).

### B.  Good Cause Exists to Grant Expedited Discovery To Camelot

Courts in the Ninth Circuit have adopted a "good cause" standard for granting requests for expedited discovery prior to the Rule 26(f) scheduling conference.  *See Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 274-275 (N.D. Cal. 2002); *see also In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1179 (C.D. Cal 2009); *see also Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal 2009); *see also Pod-Ners, LLC v. N. Feed & Bean of Lucerne, Ltd. Liab. Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002) (all recognizing a good cause standard to expedited discovery requests).

*UMG Recordings, Inc. and Zomba Recording LLC v. John Doe*, 2008 U.S. Dist. Lexis 79087 (N.D. Cal 2008) is directly on point and is instructive.  In *UMG*, Plaintiffs were record companies who filed suit against a DOE Defendant for copyright infringement, based on illegal

weintraub genshlea chediak LAW CORPORATION

downloading of copyrighted materials through P2P networks similar to BitTorrent. The *UMG* Plaintiffs had identified defendant by a unique IP address assigned to defendant on the date and at the time of the infringing activity. *Id.* at 5, 6. Plaintiffs filed a motion for leave to take immediate discovery prior to a Fed. Rule Civ. Proc. 26(f) conference, seeking leave to serve a subpoena on Doe Defendant's Internet Service Provider to discover the identity of the DOE Defendant. *Id.* at 7. The Court found that in internet infringement cases, courts routinely find good cause exists to issue a subpoena to discover a DOE defendant's identity, prior to a Rule 26(f) conference, where a plaintiff makes a prima facie showing of infringement, there is no other way to identify the DOE defendant, and there is a risk an ISP will destroy its logs prior to the conference. *Id. at 11; see also Arista Records LLC v. Does 1-43*, 2007 U.S. Dist. LEXIS 97774 at 1. In rendering its decision the court reasoned that early discovery avoids ongoing, continuous harm to the infringed party and gives plaintiff the ability to advance the litigation where there otherwise would be no other way. *Id.* at 11. Additionally, with regard to the defendant(s), there is no prejudice where the discovery request is narrowly tailored to only seek their identity. *Id.* The *UMG* Court found that the need for expedited discovery outweighed the possibility of prejudice to defendant, and granted Plaintiffs' motion for expedited discovery. *Id.* at 14-17.

The present situation is nearly identical to the one presented in *UMG*. Camelot knows only the DOE Defendants' IP addresses, Plaintiff is unable to determine Defendants' true identities unless and until the Court permits Plaintiff to conduct limited discovery by serving subpoenas on Defendants' Internet Service Providers, and there is a possibility that the ISP's may inadvertently destroy the IP logs relevant to this case. Camelot's request is narrowly tailored to obtain the identity of the IP address holders, and will not prejudice Defendants in any way. For these reasons, as in *UMG*, Camelot should be granted expedited discovery.

### III. CONCLUSION

Camelot seeks narrowly tailored forms of expedited discovery: to conduct discovery in this matter by serving subpoenas on DOE Defendants' Internet Service Providers in order to discover the true names and identities of each individual DOE Defendant.

1        Camelot's motion is based on the grounds that (1) Camelot is aware only of DOE
2   Defendants' individual Internet Protocol ("IP") addresses which can be connected to unique
3   users by name; (2) information connected to these IP addresses cannot be released by DOE
4   Defendants' Internet Service Providers without subpoenas; (3) discovery is necessary to
5   ascertain the names of each individual DOE Defendant; and (4) discovery of the identities of
6   the DOE Defendants is necessary to conduct a discovery schedule conference pursuant to Fed.
7   Rule Civ. Proc. 26(f)[1].  For the reasons stated herein, Camelot respectfully requests the Court
8   grant its application for expedited discovery.

Dated:  March 10, 2011            **weintraub** genshlea chediak
a law corporation


By:      s/ Scott M. Plamondon
Scott Hervey, State Bar No. 180188
Scott M. Plamondon, State Bar No. 212294
Attorneys for Plaintiff

---

[1] Camelot recognizes the meet and confer requirement of L.R. 37-1.  Plaintiff desires and is willing to comply with the local rules, but is unable to do so unless and until Plaintiff is granted limited expedited discovery to serve subpoenas on DOE Defendants' ISPs to discover Defendants' true identities.