

FILED

2011 MAY -5 PM 3:44

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

Bruce Isaacs, Esq. (SB# 100926), bisaacs@wymanisaacs.com
WYMAN & ISAACS LLP
5757 Wilshire Blvd., Suite 475
Los Angeles, CA 90036
Tel: (323) 648-4141
Fax: (323) 648-4133

Attorneys for Intervenor
INCENTIVE CAPITAL, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMELOT DISTRIBUTION GROUP, INC., <br><br> Plaintiff, <br> vs. <br> DOES 1 through 5865, inclusive, <br><br> ~~Defendant.~~ | Case No.: CV11-01949 DDP (FMOx) <br><br> **DECLARATION OF JOSEPH G. PIA; [PROPOSED] COMPLAINT IN INTERVENTION FOR COPYRIGHT INFRINGEMENT** <br><br> Date: June 13, 2011 <br> Time: 10:00 a.m. <br> Courtroom: "3" <br><br> (Filed Concurrently with Notice of Motion and Motion to Intervene; Memorandum of Points and Authorities in Support Thereof; and [Proposed] Order) |

DECLARATION OF JOSEPH G. PIA RE [PROPOSED] COMPLAINT IN INTERVENTION

# DECLARATION OF JOSEPH G. PIA

I JOSEPH G. PIA, hereby declare as follows:

1. I am an individual over the age of 18, and have personal knowledge of the facts set forth herein.

2. I am a partner in the law firm of Pia Anderson Dorius Reynard & Moss ("PADRM"), which is outside counsel in Utah to the Intervenor Incentive Capital, LLC ("Incentive Capital").

3. Attached hereto as Ex. "1" is a true and correct copy of the proposed Complaint in Intervention for Copyright Infringement.

4. On or about February 11, 2011, my law firm conducted a non-judicial foreclosure on behalf of our client, Incentive Capital, at which we foreclosed upon any and all distribution rights in and to the motion picture entitled *"Nude Nuns with Big Guns* (the "Motion Picture").

5. In the instant case (the "BitTorrent Case"), Camelot Distribution Group, Inc. ("Camelot") has filed a copyright infringement action against various Doe Defendants with respect to the Motion Picture. In the BitTorrent Case, Incentive Capital has filed a motion to intervene and a complaint in intervention because Incentive Capital contends that it, not Camelot, is the owner of the distribution rights to the Motion Picture by virtue of the non-judicial foreclosure which took *before* the BitTorrent Case was filed.

6. Incentive Capital contends that Camelot is not the owner of the distribution rights to the Motion Picture and, therefore, does not have standing to file, prosecute or prevail in the BitTorrent Case. Rather, Incentive Capital, as the owner of the distribution rights to the Motion Picture, contends that it is the party with standing and the real party in interest who is entitled to file, prosecute and prevail in the BitTorrent Case.

7. Case No. CV11-02323 GAF(JEMx) (the "Camelot Case") is a case between Camelot Entertainment, Inc., Camelot Film Group, Inc and Camelot Distribution Group, Inc. (the "Camelot Entities"), on the one hand, and Incentive Capital, on the other, with respect to money due and owing to Incentive Capital for the secured loans it made to the Camelot Entities to allow them to acquire a film library, a library which includes the Motion Picture.

8. The same parties, the Camelot Entities and Incentive Capital, have a similar action pending in the Utah State Court which pertains to these same matters (payment due to Incentive Capital and ownership of the distribution rights of the motion pictures in the film library, including ownership of the distribution rights in and to the Motion Picture) and Incentive Capital has already filed a motion to dismiss the Camelot Case or transfer it to the Utah State Court.

9. Incentive Capital's motion to dismiss/transfer is on calendar for June 6, 2011 before the Honorable Gary A. Feess.

10. Attached to the memorandum of points and authorities as Exhibits "A" through "H" are true and correct copies of transactional documents by which Camelot initially licensed the distribution rights to the Motion Picture, by which Incentive Capital entered into the secured loan transactions with the Camelot Entities and by which Incentive Capital acquired the distribution rights to the Motion Picture.

11. Incentive Capital's primary attorneys are based in Utah and my firm did not learn about the BitTorrent Case until a few days ago. Once we learned of the BitTorrent Case, we promptly filed this motion to intervene.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 5th day of May, 2011, at Salt Lake City, Utah.

/s/ Joseph G. Pia
JOSEPH G. PIA

Legal Tabs Co. 1-800-322-3022

Recycled  Stock #EX-5-B

**EXHIBIT 1**

Bruce Isaacs, Esq. (SB# 100926), bisaacs@wymanisaacs.com
WYMAN & ISAACS LLP
5757 Wilshire Blvd., Suite 475
Los Angeles, CA 90036
Tel: (323) 648-4141
Fax: (323) 648-4133

Attorneys for Intervenor
INCENTIVE CAPITAL, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INCENTIVE CAPITAL, LLC, a Utah limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>DOES 1 through 5865, inclusive,<br><br>    Defendant. | Case No.: CV11-01949 DDP (FMOx)<br><br>**COMPLAINT IN INTERVENTION FOR COPYRIGHT INFRINGEMENT** |

## INTRODUCTION

Plaintiff Incentive Capital, LLC ("Plaintiff" or "Incentive") is the exclusive United States distributor of the motion picture titled *Nude Nuns with Big Guns* ("the Motion Picture").

The Defendants, and each of them, engaged in the distribution of the Motion Picture via one or more peer-to-peer ("P2P") networks through the use of software which operated using the BitTorrent protocol.

The Plaintiff is informed and believes that the BitTorrent protocol is a digital communications protocol capable of enabling users to distribute large files without placing a heavy load in the source

---

INTERVENTION COMPLAINT
1

computer network. Rather than downloading a file from a single source, the BitTorrent protocol allows users to join a "swarm" comprised of multiple users hosting data on their personal computer to download and upload data from each other simultaneously. A user who wants to make a file available that is not already on this type of P2P system will first create a small torrent descriptor file which is then distributed by conventional means (web, email, etc.). He or she then makes a complete copy of the file itself available through a BitTorrent node. This original complete copy is known as a seed. Those who have acquired the torrent descriptor file can give it to their own BitTorrent nodes which, acting as peers, download it by connecting the seed and/or other peers. The file is then distributed by dividing it into segments called pieces. As each peer receives a new piece of the file, that peer becomes a source of that piece to the other peers, relieving the original seed from having to send a copy to every peer.

With BitTorrent, the task of distributing the file is shared by those who want it. Using the BitTorrent protocol, it is possible for the seed to send only a single copy of the file itself to an unlimited number of peers. When a peer completely downloads a file, it becomes an additional seed. This eventual shift from peers to seeders determines the overall "health" of the file (as determined by the number of times a file is available in its complete form). This distributed nature of BitTorrent leads to a flood-like spreading of a file throughout peers. As more peers join the swarm, the downloading speed and the likelihood of a successful download increases. Relative to standard Internet hosting, use of the BitTorrent protocol provides a significant reduction in the original distributor's hardware and bandwidth resource costs. It also provides redundancy against system problems, reduces dependence on the original distributor and provides a source for the file which is generally temporary and therefore harder to trace than when provided by the enduring availability of a host in standard file distribution techniqhes.

## THE PARTIES

1.      Incentive is a limited liability company formed pursuant to the laws of Utah, with its headquarters and primary place of business in Utah County, Utah.

2.      The true names of Defendants are unknown to the Plaintiff at this time. Each Defendant is known to the Plaintiff only by the Internet Protocol ("IP") address assigned to that Defendant by his or her Internet Service Provider on the date and at the time at which the infringing activity of each

Defendant was observed. The Plaintiff believes that information obtained in discovery will lead to the identification of each Defendant's true name and permit the Plaintiff to amend this Complaint to state the same.

3. Joinder of each of these Defendants is a single action is appropriate because each Defendant was contemporaneously engaged in a coordinated effort with the other Defendants to reproduce and distribute Plaintiff's copyrighted works to each other and hundreds of third parties via BitTorrent protocol. Plaintiff's claims against the Defendants therefore present issues of law and fact common to all Defendants and all right to relief sought against Defendants arises from the same series of transactions or occurrences.

## JURISDICTION AND VENUE

4. Jurisdiction in the District Court is based upon 28 U.S.C. § 1331, federal question, in that the action arises out of violations of the Copyright Act, 17 U.S.C. § 501 et. seq.

5. Venue is proper in the Central District of California or the District Court of Utah pursuant to 28 U.S.C. §§ 1391 and 1400, in that a substantial portion of the events giving rise to the dispute arose in those districts, the harm was sustained in those districts, and at least one Defendant is found in those districts.

Rights in Motion Picture

6. Plaintiff is licensed with the exclusive right to distribute the Motion Picture in the United States for any and all media platforms, including but not limited to theatrical, home video, television and Internet. Plaintiff obtained this exclusive right from the prior holder of the exclusive license – Camelot Distribution Group, Inc. – through non-judicial foreclosure on or about February 11, 2011.

7. Camelot Distribution Group, Inc. was licensed with the exclusive right to distribute the Motion Picture in the United States for any and all media platforms, including but not limited to theatrical, home video, television and Internet, and was granted that exclusive right from the producer of the Motion Picture on or about September 22, 2009.

8. The producer of the Motion Picture owns the copyright in the Motion Picture and filed a copyright registration application to register the copyright in the Motion Picture on September 29, 2010.

1  The producer previously registered the screen play for the Motion Picture on August 11, 2009 (Pau 003440659).

9. The Plaintiff is informed and believes that each Defendant, without the permission or consent of Plaintiff, made use of one or more P2P networks to download a copy of the Motion Picture and distributed the Motion Picture to the general public, by making the Motion Picture available for distribution to other users of the P2P network.

10. The Plaintiff does not know the true identity of the Defendants. The Plaintiff has identified or will identify each Defendant by the IP address assigned to that Defendant by his or her Internet Service Provider on the date and at the time at which the Defendant's infringing activity occurred.

11. The Defendants knew, or should have known, that they did not have the right to copy or distribute the Motion Picture.

## FIRST CLAIM FOR RELIEF

(Copyright Infringement, 17 U.S.C. § 501)

(Against All Defendants)

12. Plaintiff re-alleges and incorporates herein by reference the allegations in paragraphs 1 through 11 above as if set forth in full.

13. Plaintiff is the holder of the exclusive right to distribute the Motion Picture in the United States in all media.

14. Defendants, and each of them, infringed Plaintiff's distribution rights in and to the Motion Picture through the conduct alleged herein, including, but not limited to, downloading a copy of the Motion Picture without authorization from Plaintiff, and distributing copies of the Motion Picture by, among other activities, making a copy of the Motion Picture available for others to download and further distribute to other users, all without authorization from Plaintiff, in violation of 17 U.S.C. § 501.

15. The infringement of Plaintiff's distribution right in the Motion Picture was willful and intentional. Each Defendant knew that they did not have the right to copy or distribute the Motion Picture because they did not have the authorization from Plaintiff (or the producer) to do so. The Motion Picture

identifies and acknowledges the producer as the copyright owner, and the Defendants knew they did not have the producer's (or Plaintiff's) authorization to distribute the Motion Picture. The Motion Picture also contains a warning which informed each Defendant that copying the Motion Picture is unlawful.

16. Defendants' infringing action have caused Plaintiff injury in the form of lost sales, lost profits, and a reduction in market price for the Motion Picture because Defendants are making the illegal P2P copies of the Motion Picture available for free. Plaintiff continues to be injured by this reduction in market price, and it will take many years for the market to recover to the point where Plaintiff can charge its customary, proper retail price, and in fact the market may never recover to that point. Defendants' infringing actions therefore entitle Plaintiff to recover its actual damages and Defendants' profits in accordance with 17 U.S.C. § 504. Plaintiff may, at its election, recover statutory damages in accordance with 17 U.S.C. § 504(c).

17. Defendants' infringing actions have caused, and continue to cause, irreparable injury to Plaintiff's ability to distribute the Motion Picture by making the Motion Picture available for no charge over various P2P online networks. Defendants' actions therefore entitle Plaintiff to temporary, preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502.

18. Defendants' infringing actions also entitle Plaintiff to recover its full costs in bringing this action, including reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

WHEREFORE, Plaintiff prays for judgment as set forth below.

### PRAYER

AS TO THE FIRST CLAIM FOR RELIEF

(Copyright Infringement)

(Against All Defendants)

1. For an order requiring Defendants, and each of them, to show cause, if any they have, why they should not be enjoined as hereinafter set forth, during the pendency of this action, pursuant to 17 U.S.C. § 502;

INTERVENTION COMPLAINT
5

2. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all requiring Defendants, and each of them, and their respective officers, directors, agents, attorneys, servants and employees, and all persons acting under, in concert with, or for them:

    a. to refrain from distributing or copying the Motion Picture without express, written authorization from Plaintiff; and

    b. to turn over to Plaintiff or destroy all copies of the Motion Picture in their control or possession;

3. For actual damages and Defendants' profits pursuant to statute, 17 U.S.C. § 504;

4. For statutory damages pursuant to 17 U.S.C. § 504;

5. For costs of suit and Plaintiff's reasonable attorneys' fees according to statute, 17 U.S.C. § 505; and

6. For such other and further relief as the Court may deem just and proper.

DATED this 5th day of May, 2011.    WYMAN & ISAACS LLP

By: /s/Bruce Isaacs, Esq.
Bruce Isaacs
Attorneys for Intervenor Incentive Capital, LLC

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5, I certify that I am an employee of the law firm of WYMAN & ISAACS LLP, and that on the date shown below, I caused service of a true and correct copy of the attached: **COMPLAINT IN INTERVENTION FOR COPYRIGHT INFRINGEMENT** to be completed by:

_____        personally delivering

_____        delivery via Nationwide Legal Services

_____        sending via Federal Express or other overnight delivery service

_____        depositing for mailing in the U.S. mail with sufficient postage affixed thereto

_____        delivery via facsimile machine to fax no. _____

_____        by E-Mail – PDF Format - I caused the foregoing document to be served by e-mail transmission, in PDF Format, to each of the interested parties at the e-mail address shown below.

__X__        electronic filing, and thereby delivery via e-mail to:

Scott Hervey, Esq.
Scott Plamondon, Esq.
Weintraub Genshlea Chediak
400 Capital Mall
Suite 1100
Sacramento, CA  95814
E-Mail:  shervey@weintraub.com
         splamondon@weintraub.com

Dated this 5th day of May, 2011

/s/Lina Pearmain
Lina Pearmain

# CERTIFICATE OF SERVICE

Pursuant to FRCP 5, I certify that I am an employee of the law firm of WYMAN & ISAACS LLP, and that on the date shown below, I caused service of a true and correct copy of the attached: **DECLARATION OF JOSEPH G. PIA; [PROPOSED] COMPLAINT IN INTERVENTION FOR COPYRIGHT INFRINGEMENT** to be completed by:

\_\_\_\_\_  personally delivering

\_\_\_\_\_  delivery via Nationwide Legal Services

\_\_\_\_\_  sending via Federal Express or other overnight delivery service

__X__  depositing for mailing in the U.S. mail with sufficient postage affixed thereto

\_\_\_\_\_  delivery via facsimile machine to fax no. _____

\_\_\_\_\_  by E-Mail – PDF Format - I caused the foregoing document to be served by e-mail transmission, in PDF Format, to each of the interested parties at the e-mail address shown below.

\_\_\_\_\_  electronic filing, and thereby delivery via e-mail to:

Scott Hervey, Esq.
Scott Plamondon, Esq.
Weintraub Genshlea Chediak
400 Capital Mall
Suite 1100
Sacramento, CA  95814
E-Mail:  shervey@weintraub.com
         splamondon@weintraub.com

Dated this 5th day of May, 2011

/s/Lina Pearmain
Lina Pearmain