1

2   Corynne McSherry, Esq. (SBN 221504)
    Matthew Zimmerman, Esq. (SBN 212423)
3   ELECTRONIC FRONTIER
    FOUNDATION
4   454 Shotwell Street
5   San Francisco, CA 94110
    Telephone: (415) 436-9333
6   Facsimile: (415) 436-9993
7   Email: corynne@eff.org

8   Attorneys for *Amicus Curiae*
9   Electronic Frontier Foundation

10
                   **UNITED STATES DISTRICT COURT**
11
                  **CENTRAL DISTRICT OF CALIFORNIA**
12

13

14  CAMELOT DISTRIBUTION GROUP,     ) Case No. 11-cv-01949 DDP (FMOx)
    INC.,                           )
15                                  ) **BRIEF OF *AMICUS CURIAE* THE**
                          Plaintiff, ) **ELECTRONIC FRONTIER**
16                                  ) **FOUNDATION IN RESPONSE TO**
17      v.                          ) **ORDER TO SHOW CAUSE**
                                    )
18  DOES 1 THROUGH 5865             )
19                                  )
                        Defendants. )
20                                  )
                                    )
21

22

23

24

25

26

27

28
                   BRIEF OF *AMICUS CURIAE* THE ELECTRONIC
                 FRONTIER FOUNDATION IN RESPONSE TO OSC
                       Case No. 11-cv-01949 DDP (FMOx)

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

BACKGROUND .....................................................................................3

ARGUMENT ..........................................................................................4

I.    MASS JOINDER OF 5,865 DEFENDANTS IS IMPROPER. ............................4

  A.  Federal Courts Disapprove of Mass Joinder in Copyright Infringement Cases.4

  B.  Plaintiff Has Not Established a Concert of Action Among Defendants...........6

  C.  Plaintiff Has Not Shown a Question of Law or Fact in Common to All
      Defendants...........................................................................................8

  D.  Mass Joinder Will Unfairly Prejudice Defendants................................9

II.   PLAINTIFF HAS NOT ESTABLISHED THAT THIS COURT HAS
      PERSONAL JURISDICTION OVER THE VAST MAJORITY OF THE
      DEFENDANTS......................................................................................9

  A.  Plaintiff Has Not Made a Prima Facie Showing that the Court Has Personal
      Jurisdiction Over the Defendants Based on the Domicile of the Defendants. .10

  B.  Plaintiff Has Not Made a Prima Facie Showing that the Court Has Personal
      Jurisdiction Over the Defendants Based on Minimum Contacts with
      California...........................................................................................11

  C.  Plaintiff Cannot Undertake Discovery to Find Jurisdictional Facts. ...............13

III.  PLAINTIFF HAS NOT ESTABLISHED OWNERSHIP OF THE
      COPYRIGHT NECESSARY TO PROCEED WITH THIS ACTION...............14

  A.  Plaintiff Only Has Standing to Sue for Infringement of a Right it Owns. .......14

  B.  Plaintiff Should Not Be Allowed Discovery if its Claim May Be Dismissed..15

IV.  PLAINTIFF HAS NOT MET THE FIRST AMENDMENT TEST FOR
      UNMASKING ANONYMOUS SPEAKERS. ....................................................15

i

A.  The Right to Engage in Anonymous Speech is Protected by the First
     Amendment. ....................................................................................................16

B.  Plaintiff's Proposed Discovery Cannot Survive First Amendment Scrutiny. ..18

  1.  Plaintiff Has Not Made the Requisite Prima Facie Case. ..............................18

  2.  Defendants' First Amendment Interests Far Outweigh Plaintiff's "Need"
       for Their Identities. ...........................................................................................19

  3.  Plaintiff Must Ensure that Defendants Receive Notice of Its Pending
       Claim and Its Efforts to Unmask Them. ...........................................................19

  CONCLUSION .....................................................................................................20

# TABLE OF AUTHORITIES

## Federal Cases

*ALS Scan, Inc. v. Digital Service Consultants*,
  293 F.3d 707 (4th Cir. 2002)....................................................................12

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
  223 F.3d 1082 (9th Cir. 2000)..................................................................11

*BMG Music v. Does 1-203*,
  No. 04-0650, 2004 WL 953888 (E.D. Pa. Apr. 2, 2004) ......................5, 8

*BMG Music v. Does 1-4*,
  No. 06-1579, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. July 31, 2006).................5

*Boschetto v. Hansing*,
  No. 06-1390, 2006 U.S. Dist. LEXIS 50807 (N.D. Cal. July 13, 2006)...............13

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ...............................................................................11

*Camelot Entm't, Inc. v. Incentive Capital, LLC*,
  No. 11-2323 (C.D. Cal. Mar. 18, 2011) ...................................................14

*Cent. States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*,
  230 F.3d 934 (7th Cir. 2000).....................................................................14

*Chirila v. Conforte*,
  47 Fed. Appx. 838 (9th Cir. 2002) ...........................................................12

*Coleman v. Quaker Oats*,
  232 F.3d 1271 (9th Cir. 2000)....................................................................9

*Coughlin v. Rogers*,
  130 F.3d 1348 (9th Cir. 1997)................................................................6, 8

*Data Disc, Inc. v. Sys. Tech. Assocs.*,
  557 F.2d 1280 (9th Cir. 1977)...................................................................13

*Dendrite Int'l, Inc. v. Doe No. 3*,
  775 A.2d 756 (N.J. App. 2001)................................................17, 18, 19

iii

*Doe 1 v. Individuals*,
   561 F. Supp. 2d 249 (D. Conn. 2008) .................................................................18

*Doe v. 2themart.com, Inc.*,
   140 F. Supp. 2d 1088 (W.D. Wash. 2001) ............................................................16

*Gillespie v. Civiletti*,
   629 F.2d 637 (9th Cir. 1980)....................................................................................15

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
   284 F.3d 1114 (9th Cir. 2002)..................................................................................11

*Grandbouche v. Clancy*,
   825 F.2d 1463 (10th Cir. 1987)................................................................................17

*Highfields Capital Management, L.P. v. Doe*,
   385 F. Supp. 2d 969 (N.D. Cal. 2005) ...........................................................17, 18

*In re Verizon Internet Servs. Inc.*,
   257 F. Supp. 2d 244 (D.D.C. 2003) .......................................................................16

*Incentive Capital, LLC v. Camelot Entm't Group*,
   No. 11-0288 (D. Utah Mar. 25, 2011).....................................................................14

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ..........................................................................................10, 11

*Interscope Records v. Does 1-14*,
   558 F. Supp. 2d 1176 (D. Kan. 2008) ....................................................................16

*Interval Licensing LLC v. AOL, Inc.*,
   No. 10-1385, 2011 U.S. Dist. LEXIS 51195 (W.D. Wash Apr. 29, 2011)...............7

*IO Group, Inc. v. Does 1 - 453*,
   No. 10-4382, 2011 U.S. Dist. LEXIS 14123 (N.D. Cal. Feb. 3, 2011) ....................5

*LaFace Records, LLC v. Does 1-38*,
   No. 07-0298, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008)...................................5, 6

*Lange v. Thompson*,
   No. 08-0271, 2008 U.S. Dist. LEXIS 60731 (W.D. Wash. Aug. 6, 2008) .............12

iv

*LFP Internet Group LLC v. Does 1-3,120*,
  No. 10-2095 (N.D. Tex. Feb. 10, 2011) .................................................5

*London-Sire Records, Inc. v. Doe 1*,
  542 F. Supp. 2d 153 (D. Mass 2008) .................................................18

*McIntyre v. Ohio Elections Comm'n*,
  514 U.S. 334 (1995) .................................................16, 17

*Milliken v. Meyer*,
  311 U.S. 457 (1940) .................................................10

*Mosley v. General Motors Corp.*,
  497 F.2d 1330 (8th Cir. 1974) .................................................6

*Motown Records v. Does 1-252*,
  No. 04-0439 (N.D. Ga. Aug. 16, 2004) .................................................6

*MyMail, Ltd. v. America Online, Inc.*,
  223 F.R.D. 455 (E.D. Tex. 2004) .................................................6

*New York Times v. Sullivan*,
  376 U.S. 254 (1964) .................................................17

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
  52 F.3d 267 (9th Cir. 1995) .................................................11

*Pebble Beach Co. v. Caddy.*,
  453 F.3d 1151 (9th Cir. 2006) .................................................10, 11, 14

*Perry v. Vill. of Arlington Heights*,
  186 F.3d 826 (7th Cir. 1999) .................................................15

*Reno v. ACLU*,
  521 U.S. 844 (1997) .................................................16

*SaleHoo Group, Ltd. v. ABC Co.*,
  722 F. Supp. 2d 1210 (W.D. Wash. 2010) .................................................18

*Shelley v. Kraemer*,
  334 U.S. 1 (1948) .................................................17

v

*Silkwood v. Kerr-McGee Corp.*,
   563 F.2d 433 (10th Cir. 1977)..................................................................17

*Silvers v. Sony Pictures Entm't, Inc.*,
   402 F.3d 881 (9th Cir. 2005)...................................................................15

*Sinclair v. TubeSockTedD*,
   596 F. Supp. 2d 128 (D.D.C. 2009) ....................................................2, 18

*Smith v. Jackson*,
   84 F.3d 1213 (9th Cir. 1996)...................................................................15

*Sony Music Entm't, Inc. v. Does 1-40*,
   326 F. Supp. 2d 556 (S.D.N.Y. 2004)...................................................6, 18

*Stauffacher v. Bennett*,
   969 F.2d 455 (7th Cir. 1992)...................................................................12

*Terracom v. Valley Nat'l Bank*,
   49 F.3d 555 (9th Cir. 1995).....................................................................14

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004).................................................................15

*Tilley v. TJX Cos.*,
   345 F.3d 34 (1st Cir. 2003) .......................................................................5

*Twentieth Century Fox Film Corp. v. Does 1-12*,
   No. 04-4862 (N.D. Cal. Nov. 16, 2004).....................................................6

*UMG Recordings, Inc. v. Does 1-4*,
   No. 06-0652, 2006 WL 1343597 (N.D. Cal. Mar. 6, 2006)......................16

*UMG Recordings, Inc. v. Does 1-51*,
   No. 04-0704 (W.D. Tex. Nov. 17, 2004) ...................................................5

*USA Techs. v. Doe*,
   713 F. Supp. 2d 901 (N.D. Cal. 2010) ....................................................18

*Virgin Records Am. v. Does 1-44*,
   No. 04-0438 (N.D. Ga. Mar. 3, 2004).........................................................6

*VPR Internationale v. Does 1-1017*,
No. 11-2068 (C.D. Ill. Apr. 29, 2011)........................................................8

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003)...........................................................14, 15

*Washington v. Sandoval*,
No. 10-0250, 2011 U.S. Dist. LEXIS 43377 (N.D. Cal. Apr. 19, 2011) .................8

*West Coast Productions v. Does 1-2010*,
No. 10-0093 (N.D.W. Va. Dec. 16, 2010) .............................................5

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) .......................................................................10

**Federal Statutes**

17 U.S.C. § 501 ...............................................................................15

Fed. R. Civ. P. 20 ......................................................................4, 8, 9

**Treatises**

Eriq Gardner, *More Than 100,000 People Have Been Sued for Sharing Movies in the Past Year*, Hollywood Reporter (Feb. 1, 2011)........................................1

# **INTRODUCTION**

This Court has appointed the Electronic Frontier Foundation ("EFF") as *amicus curiae*, authorizing EFF to file a brief regarding the Court's Order to Show Cause of April 22, 2011, as to why the Doe Defendants should not be severed and/or dismissed from the action. EFF files this brief pursuant to that Order, discussing the misjoinder of the Defendants and the Court's lack of personal jurisdiction over the vast majority of the Defendants, along with the additional First Amendment problems that Plaintiff Camelot Distribution Group, Inc., would inherently face as it attempted to obtain the names of the 5,865 Defendants as it goes forward, even if these shortcomings were somehow satisfied.

At the outset, it is critical to note that Plaintiff's claim must be evaluated in context. This case — along with a growing number of other mass copyright cases filed across the country, affecting over 100,000 people[1] to date — raises serious problems of fairness, due process, and individual justice. In these cases, plaintiffs have sued hundreds or thousands of unnamed defendants from all over the country, alleging only a single act of copyright infringement.

The suits do not appear to be filed with the intention of litigating them. Instead, it seems that the plaintiffs' lawyers hope to use the threat of statutory damages and attorney's fees, the ignorance of those sued about their potential defenses, and the stigma associated with downloading pornographic movies (or movies with pornographic-sounding titles) to induce the defendants into settling for a payment of roughly (in some cases) $1,500 to $2,500. This amount is less than a defendant would likely have to spend just to hire a lawyer to defend the case. And strong defenses exist for many sued: for example, these plaintiffs would be hard-pressed to prove actual damages caused by any particular defendant; there is also a

---

[1] *See* Eriq Gardner, *More Than 100,000 People Have Been Sued for Sharing Movies in the Past Year*, Hollywood Reporter (Feb. 1, 2011), http://www.hollywoodreporter.com/blogs/thr-esq/100000-people-sued-sharing-movies-95095.

1

reasonable chance they would not have any basis for seeking statutory damages. Nevertheless, due to their ignorance of the law and the financial burden of raising defenses in distant courts, defendants frequently settle.

While a rightful copyright owner may certainly seek legal redress for alleged infringement, this Plaintiff has not followed two important procedural safeguards developed by the federal courts.  The first of these safeguards is joinder.  Plaintiff has improperly joined 5,865 unrelated Doe Defendants into this single action, jeopardizing their rights to individual evaluations of their actions and defenses.  The second safeguard is personal jurisdiction.  Plaintiff's own factual allegations show that almost all of the Doe Defendants are located outside this Court's jurisdiction. Plaintiff has also failed to allege that Doe Defendants have sufficient contacts with California to support being haled into court here.

Furthermore, Plaintiff has not conclusively established ownership of the copyright in question, casting Plaintiff's standing into doubt.  Nor has Plaintiff met the First Amendment test for discovery of the identities of persons who have communicated anonymously online.   As explained in 2009 in *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128 (D.D.C. 2009)*, individuals who communicate anonymously online may be identified only after a plaintiff meets a multi-factor test, balancing the right to seek redress for legitimate claims against the fundamental First Amendment right to communicate anonymously.  Plaintiff has not met that standard.

While the Plaintiff moved to dismiss this action without prejudice on May 23, 2011, the Court has not yet granted that dismissal motion.  *Amicus* urges the Court to deny Plaintiff's motion and to make an affirmative finding that the case must be dismissed on the grounds of misjoinder and lack of personal jurisdiction.  Having apparently come to this Court seeking not to litigate a valid claim but instead to utilize the Court's authority to unmask the Doe Defendants as part of a settlement campaign, Plaintiff should be made to answer for its dragnet approach and not be

permitted to test the Court for a favorable response and then retreat without consequence when it meets procedural resistance.

### BACKGROUND

On March 7, 2011, Plaintiff Camelot Distribution Group, Inc. ("Camelot") filed suit against 5,865 unnamed Doe Defendants for copyright infringement of *Nude Nuns with Big Guns* (the "Motion Picture") in violation of 17 U.S.C. § 501. Complaint at ¶¶ 11-17 (Docket No. ("DN") 1). Three days later, Plaintiff filed a Motion for Expedited Discovery. DN 5. This motion was denied without prejudice and subsequently re-filed on March 18, 2011. DN 10, 11. On April 22, 2011, the Court ordered Plaintiff to "show cause why Doe Defendants should not be severed and/or dismissed from this action based on improper joinder of parties or lack or personal jurisdiction." DN 15. Plaintiff's re-filed Motion for Expedited Discovery was vacated pending a ruling on the Court's Order. *Id*. at ¶ 6. Plaintiff filed a response ("Pl.'s Resp.") on May 13, 2011. DN 22. *Amicus* files this brief in opposition to Plaintiff's Response.

On May 5, 2011, Incentive Capital, LLC ("Incentive"), a non-party to the original Complaint, moved to intervene. [2] DN 17. On April 27, 2010, Incentive financed Camelot's purchase of the rights to a film library which included the Motion Picture, and accepted a security interest in the film rights as collateral. *Id*. at 20-68. Incentive alleges Camelot failed to meet its obligations on the loan, and foreclosed on the rights on or around February 11, 2011. *See* Decl. of Joseph G. Pia (DN 18). Incentive now claims ownership, having bid successfully for the film library at public sale following foreclosure. DN 17 at 3. Camelot counters that Incentive wrongfully foreclosed, and filed suit in this district. *See* Notice of Removal of Action under 28 U.S.C. §1441(b) (Diversity), *Camelot Entertainment*

---

[2] On May 24, 2011, Plaintiff filed a "Notice of Dismissal Without Prejudice." DN 24. However, because of the pending Motion to Intervene, the Court has explicitly declined to dismiss the case thus far. *See* Notice to Filer of Deficiencies (DN 25).

1  *Inc. v. Incentive Capital LLP*, Case No. 11-2323 (C.D. Cal. Mar. 18, 2011).

2  Incentive filed a second suit in Utah stemming from the same contractual dispute.

3  *See* Complaint, *Incentive Capital v. Camelot Entertainment Group*, Case No. 11-

4  0288 (D. Utah Mar. 25, 2011).

5  <u>**ARGUMENT**</u>

6  **I.   MASS JOINDER OF 5,865 DEFENDANTS IS IMPROPER.**

7  Rule 20 of the Federal Rules of Civil Procedure ("Rule 20") allows for joinder

8  of defendants when two conditions are met.  First, a plaintiff must demonstrate that

9  its "right to relief is asserted against [defendants] jointly, severally, or in the

10  alternative with respect to or arising out of the same transaction, occurrence, or series

11  of transactions or occurrences."  Fed. R. Civ. P. 20(a)(2).  Second, "any question of

12  law or fact *common to all defendants* [must] arise in the action."  *Id*. (emphasis

13  added).   Even if these requirements are satisfied, a "court may issue orders —

14  including an order for separate trials — to protect a party against embarrassment,

15  delay, expense, or other prejudice . . . ."  Fed. R. Civ. P. 20(b).

16  Here, Plaintiff has not shown that joinder of 5,865 Doe Defendants is

17  appropriate.  As an initial matter, federal courts have overwhelmingly rejected mass

18  joinder in similar copyright cases.  Plaintiff's primary argument that Doe Defendants

19  participated in the same transaction or series of transactions solely because they

20  allegedly used the BitTorrent protocol is unpersuasive.   Moreover, Plaintiff's

21  conclusory assertion that a question of law or fact is common to all Doe Defendants

22  ignores a wide variety of factual circumstances and legal arguments.  Finally, joinder

23  would put Doe Defendants at serious risk of suffering embarrassment and injustice.

24  Thus, joinder is not proper in this case; Plaintiff's suit should be severed.

25  **A.   <u>Federal Courts Disapprove of Mass Joinder in Copyright Infringement Cases.</u>**

26

27  Plaintiff is not the first to sue numerous unrelated defendants in a single

28  copyright infringement lawsuit based on the coincidence that they allegedly

4

infringed works owned by the same copyright holder. *See, e.g.*, *Tilley v. TJX Inc.*, 345 F.3d 34, 42-43 (1st Cir. 2003) (vacating defendant class certification order in copyright infringement case). Federal courts have recognized that mass copyright suits may deny individual justice to those caught up in a plaintiff's indiscriminate dragnet. Several courts have severed these cases, effectively dismissing tens of thousands of Doe defendants nationwide. *See, e.g.*, *LFP Internet Group LLC v. Does 1-3120*, No. 10-2095 (N.D. Tex. Feb. 10, 2011) (*Amicus's* Request for Judicial Notice ("RJN" Ex. D)) (quashing subpoenas, holding that Plaintiff did not show that the Defendants were "in any way related to each other, or that they acted in concert or as a group in their allegedly offending actions"); *IO Group, Inc. v. Does 1 - 435*, No. 10-4382, 2011 U.S. Dist. LEXIS 14123, at *2 (N.D. Cal. Feb. 3, 2011) (RJN, Ex. A) ("[T]he allegations that defendants simply used the same peer-to-peer network to download plaintiff's work . . . is insufficient to allow plaintiff to litigate against hundreds of different Doe defendants in one action."); *West Coast Productions v. Does 1-2010*, No. 10-0093 (N.D.W. Va. Dec. 16, 2010) (RJN, Ex. C).

These orders, disapproving of joining large numbers of defendants in a single action under Rule 20, follow a pattern starting as early as 2004. *See, e.g., BMG Music v. Does 1-203*, No. 04-0650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); *LaFace Records, LLC v. Does 1-38*, No. 07-0298, 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008) (severing a lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same networks); *BMG Music v. Does 1-4*, No. 06-1579, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006) (severing, *sua sponte*, multiple defendants in action where the only connection between them was allegation they used same ISP to conduct copyright infringement); *UMG Recordings, Inc. v. Does 1-51*, No. 04-0704 (W.D. Tex. Nov. 17, 2004) (RJN, Ex. E) (dismissing without prejudice all but the first of 254 defendants accused of unauthorized music file-

1  sharing); *Twentieth Century Fox Film Corp. v. Does 1-12*, No. 04-4862 (N.D. Cal.

2  Nov. 16, 2004) (RJN, Ex. B) (permitting discovery to identify first of twelve Doe

3  defendants but staying case against remaining Does until plaintiff could demonstrate

4  proper joinder).[3]

## B.  Plaintiff Has Not Established a Concert of Action Among Defendants.

6  Persons "may be joined in one action as defendants if any right to relief is

7  asserted . . . with respect to or arising out of the same transaction, occurrence, or

8  series of transactions or occurrences."  Fed. R. Civ. P. 20(a)(2).  This first prong

9  broadly "refers to similarity in the factual background of a claim."  *Coughlin v.*

10  *Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).  The "same transaction" requirement is

11  generally evaluated on a case-by-case basis.  *See Mosley v. Gen. Motors Corp.*, 497

12  F.2d 1330, 1333 (8th Cir. 1974).  "No hard and fast rules have been established

13  under [Rule 20]."  *Id.*  "However, merely committing the same type of violation in

14  the same way does not link defendants together for the purposes of joinder."  *LaFace*

15  *Records*, 2008 WL 544992, at *2.

16  Plaintiff advances three arguments for joining Doe Defendants.  First, it

17  alleges the "very nature" of the BitTorrent protocol creates a sufficient concert of

18  action to support joinder.  DN 22 at 6.  Second, Plaintiff cites *MyMail, Ltd. v.*

19  *America Online, Inc.*, 223 F.R.D. 455 (E.D. Tex. 2004), for the proposition that "the

20  fact that Plaintiff is alleging infringement of only one work tends to show a

21  relationship among all Doe Defendants."  Pl's Resp. at 7.  Third, "the evidence

22  supporting Plaintiff's claims against the Doe Defendants arose from the same

23  investigation . . . ."  *Id.* at 8.  Therefore, Plaintiff asserts, "liability for all Doe

24

25  [3] *Amicus* recognizes that such judicial analysis has not been universal.  *See, e.g., Motown Records*
*v. Does 1-252*, No. 04-0439 (N.D. Ga. Aug. 16, 2004) (denying motion to quash); *Virgin Records*
26  *Am. v. Does 1-44*, No. 04-0438 (N.D. Ga. Mar. 3, 2004) (granting leave to take expedited
discovery); *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004)
27  (applying First Amendment balancing test but denying as premature motion to quash based on
misjoinder and lack of personal jurisdiction).

28

1   Defendants arises out of the same transaction or series of transactions, meeting the

2   first requirement of Rule 20(a)." *Id*.

3         These arguments fall short of the legal standard for permissive joinder.  First,

4   the "very nature" of the BitTorrent protocol is not substantially different from other

5   peer-to-peer ("P2P") protocols at issue in other cases in which actions were severed

6   or dismissed.   Decl. of Seth Schoen ¶ 31.   In fact, BitTorrent's file-focused

7   distribution makes it *more* difficult to identify and collaborate with file-sharing

8   peers.  *Id*. ¶ 33.  Further, Plaintiff's own Exhibit B shows seven different "File Size"

9   and "File Hash" values.   Decl. of Scott Plamondon in Supp. of Pl.'s Mot. for

10  Expedited Disc., Ex. B (DN 5) at 1.  That is, there may be at least twenty original

11  infringers.   Decl. of Seth Schoen ¶ 44.   Plaintiff's assertion that Doe Defendants

12  were "involved with the copying and distribution of the exact same infringing file,"

13  Decl. of Tobias Fieser ¶ 12, contradicts its own evidence.  It is flatly false.

14        Second, at least one other district court in this circuit has explicitly rejected

15  *MyMail*, denying permissive joinder of defendants who had allegedly infringed the

16  same patent.  *See Interval Licensing LLC v. AOL, Inc.*, No. 10-1385, 2011 U.S. Dist.

17  LEXIS 51195, at *9-10 (W.D. Wash. Apr. 29, 2011) (referring to *MyMail* as

18  "unpersuasive" and recognizing that its "logical relationship" test "is not the state of

19  the law in the Ninth Circuit as to Rule 20").  *Amicus* urges the Court to follow suit.

20        Finally, the fact that a single investigation turned up many acts of alleged

21  wrongdoing is irrelevant.   The dispositive issue is whether the actions of Doe

22  Defendants were part of the same transaction or series of transactions.  Investigations

23  by Plaintiff or a third party hired by Plaintiff do not bear on that question

24  whatsoever, unless that investigation turns up facts indicating defendants engaged in

25  single transaction or series of transactions together.  Plaintiff has not proffered any

26  details about the investigation or how it links Doe Defendants.  Plaintiff has failed to

27  satisfy the first prong of the Rule 20 standard for joinder.

28

### C.   Plaintiff Has Not Shown a Question of Law or Fact in Common to All Defendants.

Rule 20's second requirement is that a case will present a "question of law or fact common to all defendants . . . ." Fed. R. Civ. P. 20(a)(2)(B). The "mere fact that all [of a plaintiff's] claims arise under the same general law does not necessarily establish a common question of law or fact." *Coughlin*, 130 F.3d at 1351. "Claims 'involving different legal issues, standards, and procedures' do not involve common factual or legal questions." *Washington v. Sandoval*, No. 10-0250, 2011 U.S. Dist. LEXIS 43377, at *4 (N.D. Cal. Apr. 19, 2011) (quoting *Coughlin*, 130 F.3d at 1351).

Plaintiff's arguments do not meet Rule 20's standard. Plaintiff alleges "each and every Doe Defendant used a torrent protocol to download and/or distribute Plaintiff's Movie," and asserts that this is sufficient to establish "similar questions of fact." DN 22 at 8. Plaintiff then asserts that because it has "alleged the exact same legal claim against each and every Doe Defendant — 'Copyright Infringement'" its claim "will raise similar questions of law." *Id*.

These arguments ignore the wide range of factual circumstances and legal defenses likely to arise out of a pool of over five thousand defendants. "IP subscribers are not necessarily copyright infringers." *VPR Internationale v. Does 1-1017*, No. 11-2068, at 2 (C.D. Ill. Apr. 29, 2011). As one court noted:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.

*BMG Music*, 2004 WL 953888, at *1. Each Doe Defendant will have unique factual circumstances, and therefore may have unique legal defenses. This Court should reject Plaintiff's conclusory statements that this case presents common factual and legal issues.

8

### D.    Mass Joinder Will Unfairly Prejudice Defendants.

Even if a plaintiff meets the requirements for permissive joinder under Rule 20(a), courts have broad discretion to refuse joinder or sever the case in order "to protect a party against embarrassment, delay, expense, or other prejudice . . . ." Fed. R. Civ. P. 20(b); *see also Coleman v. Quaker Oats*, 232 F.3d 1271, 1296 (9th Cir. 2000) (explaining that permissive joinder must "comport with the principles of fundamental fairness").

The Court should exercise that discretion and sever the Doe Defendants.  Of course, joining thousands of unrelated defendants in one lawsuit can make litigation less expensive for the Plaintiff.  Plaintiff may avoid the separate filing fees required for individual cases and lower travel costs.  But cost-efficiency does not justify ignoring well-established joinder principles.  Here, the suit appears intentionally crafted to embarrass the Doe Defendants into settling.  Plaintiff claims ownership of the rights to many different copyrighted works.  *See* DN 17, Ex. C at 13 (Schedule 1).  It could have pursued vindication of rights in films with relatively benign names like *Samurai Avenger*, *Never Sleep Again*, or *Next of Kin*.  *Id*.  Instead, Plaintiff has chosen the most salaciously named film on the list: *Nude Nuns with Big Guns*.  Even though the Motion Picture itself is not pornographic, its title evokes particularly provocative material; this is likely to cause an unmasked Doe Defendant significant embarrassment.  Fear of embarrassment increases the pressure to settle, regardless of the possible availability of myriad legal defenses.

## II.    PLAINTIFF HAS NOT ESTABLISHED THAT THIS COURT HAS PERSONAL JURISDICTION OVER THE VAST MAJORITY OF THE DEFENDANTS.

The Due Process Clause imposes on every plaintiff the burden of establishing personal jurisdiction.  As a fundamental matter of fairness, no defendant should be forced to have his rights and obligations determined in a jurisdiction with which he has had no contact.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,

9

297 (1980).  Accordingly, a plaintiff bears the burden of pleading facts sufficient to support the Court's exercise of personal jurisdiction over all putative defendants. *See*, *e.g.*, *Pebble Beach Co. v. Caddy.*, 453 F.3d 1151, 1154 (9th Cir. 2006) (stating that plaintiff bears the burden of making a prima facie case).  In general, federal courts may exercise personal jurisdiction over individuals only if (1) a defendant's domicile is within the jurisdiction,[4] or (2) a defendant has "minimum contacts" with the forum State such that subjecting that defendant to jurisdiction does not offend "traditional notions of fair play and substantial justice."  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Milliken v. Meyer*, 311 U.S. 457, 463-64 (1940).

### A.   Plaintiff Has Not Made a Prima Facie Showing that the Court Has Personal Jurisdiction Over the Defendants Based on the Domicile of the Defendants.

Plaintiff has plainly failed to make a prima facie showing to support domicile as a basis for jurisdiction.  The only jurisdictional facts alleged by Plaintiff are (1) IP addresses identifying allegedly infringing computers, (2) dates and times of allegedly infringing activities, and (3) filenames of the allegedly infringing files.  DN 5, Ex. B. No facts relating to domicile appear anywhere in Plaintiff's filings.  Although Exhibit B includes "Time Zone," "City," and "Provider Network Name" fields, these columns are conspicuously — or intentionally — left blank.  *Id*.

On the contrary, the facts pled provide prima facie evidence that the vast majority of Doe Defendants are domiciled outside of California.  Using widely available and generally reliable techniques, *Amicus* found that only 734 Doe Defendants used IP addresses located in California.  Decl. of Seth Schoen ¶ 26.  As

---

[4] As pled, Plaintiff alleges that the Court has personal jurisdiction over the Defendants because "at least one Defendant is found in this district."  Complaint at ¶ 5.  For the purposes of this argument, *Amicus* will treat Plaintiff's jurisdictional allegation as one based on domicile, not the imprecise and legally insignificant "found in" language.

10

such, the Court should find that it has no basis to exercise personal jurisdiction over the vast majority of Defendants based on domicile.

### B.   Plaintiff Has Not Made a Prima Facie Showing that the Court Has Personal Jurisdiction Over the Defendants Based on Minimum Contacts with California.

In order for a court to exercise personal jurisdiction over a non-consenting, non-resident defendant, the Due Process Clause requires a plaintiff to demonstrate that: (1) the non-resident "has minimum contacts with the forum" and (2) requiring the defendant to defend its interests in that forum "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (internal quotations omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-77 (1985). The Ninth Circuit has articulated a three-prong test for minimum contacts:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.[5]

*Pebble Beach*, 453 F.3d at 1155 (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).   "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).

The Ninth Circuit has refined the first prong of its minimum contacts test, requiring a plaintiff to show that a defendant has "(1) purposely availed himself of the privilege of conducting activities in California, . . . or (2) that he purposefully directed his activities toward [California]."   *Pebble Beach*, 453 F.3d at 1155 ("Evidence of availment is typically action taking place in the forum that invokes the

---

[5] This is the test for *specific* jurisdiction.   "Alternatively, a defendant whose contacts are substantial, continuous, and systematic is subject to a court's *general* jurisdiction even if the suit concerns matters not arising out of his contacts with the forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) (emphasis added).   Because Plaintiff does not yet know the identities of Doe Defendants, it does not — and cannot — argue that each has "substantial, continuous, and systematic" contacts with California.

11

1   benefits and protections of the laws in the forum.  Evidence of direction generally

2   consists of action taking place outside the forum that is directed at the forum.").

3   That is, a defendant's action must be "expressly aimed at the forum state."  *Id*.  A

4   "bare allegation of a conspiracy between the defendant and a person within the

5   personal jurisdiction of the court is not enough."  *Chirila v. Conforte*, 47 Fed. Appx.

6   838, 843 (9th Cir. 2002) (quoting *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir.

7   1992)).

8     To the extent that Plaintiff claims personal jurisdiction based on the cross-

9   border accessibility of information on the Internet, courts have long rejected such

10   theories of effective universal jurisdiction.  As the Fourth Circuit explained in *ALS*

11   *Scan, Inc. v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002):

12      The argument could . . . be made that the Internet's electronic signals
   are surrogates for the person and that Internet users conceptually enter a
13      State to the extent that they send their electronic signals into the State,
   establishing those minimum contacts sufficient to subject the sending
14      person to personal jurisdiction in the State where the signals are
   received. . . . But if that broad interpretation of minimum contacts were
15      adopted, State jurisdiction over persons would be universal, and notions
   of limited State sovereignty and personal jurisdiction would be
16      eviscerated.

17   *Id.* at 712-713 (citations omitted).  Accordingly, the Fourth Circuit limited the

18   exercise of personal jurisdiction based on Internet usage to situations where the

19   defendant "(1) directs electronic activity into the State, (2) with the manifested intent

20   of engaging in business or other interactions within the State, and (3) that activity

21   creates, in a person within the State, a potential cause of action cognizable in the

22   State's courts."  *Id.* at 714; *see also Lange v. Thompson*, Case No. 08-0271, 2008

23   U.S. Dist. LEXIS 60731, at *7-8 (W.D. Wash. Aug. 6, 2008) (citing the *ALS Scan*

24   test with approval).  Under this standard, "a person who simply places information

25   on the Internet does not subject himself to jurisdiction in each State into which the

26   electronic signal is transmitted and received."  *ALS Scan*, 293 F.3d at 714.

27

28

1    Plaintiff clearly fails these tests.  It makes no allegations that any Doe

2    Defendant invoked the protection of California law.  It has not alleged that any Doe

3    Defendant purposely directed conduct toward California.  Plaintiff does not even

4    claim that any Doe Defendant knew that the copyright holder was in California.  In

5    sum, Plaintiff has failed to connect any non-resident Doe Defendant to California in

6    any cognizable way.

7    Requiring individuals from across the country to secure counsel far from

8    home, where they are unlikely to have contacts, creates exactly the sort of hardship

9    and unfairness that personal jurisdiction requirements exist to prevent.  Here, the

10   hardship is very clear.  When the underlying claim is a single count of copyright

11   infringement, the cost of securing counsel just to defend a defendant's identity is

12   likely more than the cost of settlement and possibly even more than the cost of

13   judgment if the defendant lost in the litigation entirely.

14   Plaintiff has not met its burden to establish this Court's jurisdiction over the

15   Doe Defendants.  It makes no argument that any particular Doe Defendant is "found

16   in" California.  In fact, Plaintiff's own evidence supports the opposite conclusion.

17   Therefore, the Court should find that it lacks personal jurisdiction based on Doe

18   Defendants' domiciles.  Further, Plaintiff has not made sufficient factual allegations

19   to support jurisdiction based on minimum contacts.  Accordingly, *Amicus* urges the

20   Court to dismiss the suit against all Doe Defendants.

21   **C.** **Plaintiff Cannot Undertake Discovery to Find Jurisdictional Facts.**

22   A trial court has "broad discretion to permit or deny discovery to determine

23   whether personal jurisdiction exists."  *Boschetto v. Hansing*, No. 06-1390, 2006 U.S.

24   Dist. LEXIS 50807, at *14 (N.D. Cal. July 13, 2006) (Walker, C.J.) (citing *Data

25   Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)), *aff'd* 539

26   F.3d 1011 (9th Cir. 2008), *cert. denied* 129 S. Ct. 1318 (2009).  When a plaintiff

27   makes no more than "bare allegations . . . the Court need not permit even limited

28

13

discovery." *Pebble Beach*, 435 F.3d at 1160 (citing *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)); *see also Cent. States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) ("At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted.").

This Court should decline to allow jurisdictional discovery.  Plaintiff's own factual allegations serve only to demonstrate the *absence* of proper jurisdiction.  To the extent that Plaintiff seeks discovery in support of its jurisdictional allegations, this effort too must fail.  Plaintiff must make a prima facie case for jurisdiction before discovery is issued, not after.

## III.   PLAINTIFF HAS NOT ESTABLISHED OWNERSHIP OF THE COPYRIGHT NECESSARY TO PROCEED WITH THIS ACTION.

Should the Court find for the plaintiff regarding joinder and personal jurisdiction, it should move forward cautiously.  Plaintiff is a party to two suits in which its ownership of the copyright in question is disputed:  one before this Court and one in the District of Utah.  *See Camelot Entm't, Inc. v. Incentive Capital, LLC*, No. 11-2323 (C.D. Cal. Mar. 18, 2011); *Incentive Capital, LLC v. Camelot Entm't Group*, No. 11-0288 (D. Utah Mar. 25, 2011).  Given the intrusiveness of discovery to identify Doe Defendants, the Court should not proceed until it is clear Plaintiff's claim will not be dismissed for lack of standing.

### A.   Plaintiff Only Has Standing to Sue for Infringement of a Right it Owns.

The issue of standing may be raised at any time during litigation; it is indispensable to a case.  *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) ("[T]he elements of standing . . . must be supported at each stage of litigation in the same manner as any other essential element of the case.").  When standing is challenged as a factual matter, a plaintiff must allege facts sufficient to support it.  *See Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829

14

(7th Cir. 1999).  To establish copyright infringement, a plaintiff has the burden of showing that it owns an exclusive right in the allegedly infringed works.  17 U.S.C. § 501 (2006); *see also Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 886 (9th Cir. 2005); *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir.1994)).  If a plaintiff cannot conclusively prove copyright ownership, its claims may be dismissed.  *See Warren*, 328 F.3d at 1140.

Here, Plaintiff may not in fact own the rights it asserts.  Given the active multistate contest over the ownership of the rights, Plaintiff's assertion of an exclusive license is questionable at best.  Accordingly, as long as its ownership is disputed, it is not clear Plaintiff has standing to bring this suit.

**B.    Plaintiff Should Not Be Allowed Discovery if its Claim May Be Dismissed.**

Discovery devices such as subpoenas are "a substantial delegation of authority to private parties, and those who invoke [them] have a grave responsibility to ensure [they are] not abused."  *Theofel v. Farey-Jones*, 359 F.3d 1066, 1074 (9th Cir. 2004).  Thus, a plaintiff should not be permitted discovery to identify unknown defendants if the complaint would be dismissed on other grounds.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

*Amicus* urges this Court to sever and/or dismiss this case based on improper joinder, lack of personal jurisdiction, and lack of standing.  Discovery should not be permitted.  If the Court does find for the Plaintiff regarding joinder and personal jurisdiction, this "grave responsibility" compels the Court to proceed with discovery only with great care.

**IV.   PLAINTIFF HAS NOT MET THE FIRST AMENDMENT TEST FOR UNMASKING ANONYMOUS SPEAKERS.**

Plaintiffs are often allowed discovery at the outset of a lawsuit to identify otherwise unknown persons alleged to have committed a legal wrong.  Plaintiff has

15

failed to apprise the Court of the appropriate discovery standard in cases where, as here, Defendants are alleged to have engaged in anonymous communication and Plaintiff's claims arise from those alleged activities.  Given the large number of Doe Defendants affected and the salacious nature of the movie title in question, Plaintiff must adhere to appropriate procedure before individuals' identities are disclosed to prevent widespread harm.

### A.   The Right to Engage in Anonymous Speech is Protected by the First Amendment.

"[The] decision to remain anonymous . . . is an aspect of the freedom of speech protected by the First Amendment."  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995).  This fundamental right enjoys the same protections whether the context for speech and association is an anonymous political leaflet, an Internet message board or a video-sharing site.  *See Reno v. ACLU*, 521 U.S. 844, 870 (1997) (there is "no basis for qualifying the level of First Amendment scrutiny that should be applied" to the Internet); *see also*, *e.g.*, *Doe v. 2themart.com, Inc.*, 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001) (the Internet promotes the "free exchange of ideas" because people can easily engage in such exchanges anonymously).

First Amendment protection extends to the anonymous publication of expressive works on the Internet, even if the publication is alleged to infringe copyrights.  *See Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004) ("[T]he use of P2P file copying networks to download, distribute or make sound recordings available qualifies as speech entitled to First Amendment protection."); *see also, e.g.*, *Interscope Records v. Does 1-14*, 558 F. Supp. 2d 1176, 1178 (D. Kan. 2008); *UMG Recordings, Inc. v. Does 1-4*, No. 06-0652, 2006 WL 1343597, at *2 (N.D. Cal. Mar. 6, 2006); *In re Verizon Internet Servs. Inc.*, 257 F. Supp. 2d 244, 260 (D.D.C. 2003), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003).

16

Because the First Amendment protects anonymous speech and association, efforts to use the power of the courts to pierce anonymity are subject to a qualified privilege which a court must consider before authorizing discovery.[6]   *See, e.g.,* *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (citing *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977)) ("[W]hen the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure.").

Only a compelling government interest can overcome such First Amendment rights.  *See, e.g., McIntyre v. Ohio Elections Comm'n*, 514 U.S. at 347.  Merely filing a lawsuit does not make the identification of a defendant a compelling interest unless there is good reason to believe that the suit has a legitimate basis.[7]   Courts evaluating attempts to unmask anonymous speakers have adopted standards that balance one person's right to speak anonymously with a litigant's legitimate need to pursue a claim.

In reaching this balance, courts have relied on the foundational case of *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. App. 2001).  Under *Dendrite*, a plaintiff must:

1) make reasonable efforts to notify the accused Internet user of the pendency of the identification proceeding and explain how to present a defense;

2) set forth the exact actions of each Doe defendant that constitute actionable cause;

---

[6] A court order, even if granted to a private party, is state action and hence subject to constitutional limitations.  *See, e.g., New York Times v. Sullivan*, 376 U.S. 254, 265 (1964); *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948).

[7] *See, e.g., Highfields Capital Management, L.P. v. Doe*, 385 F. Supp. 2d 969, 975 (N.D. Cal. 2005) ("It is not enough for a plaintiff simply to plead and pray.  Allegation and speculation are insufficient. . . . [P]laintiff must adduce *competent evidence* — and the evidence plaintiff adduces must . . . tend to support a finding of *each* fact that is essential to a given cause of action.") (emphasis in original).

17

3) allege all elements of the cause of action and introduce prima facie evidence for each Doe defendant sufficient to survive a motion for summary judgment; and

4) "balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed."

*Dendrite*, 775 A.2d at 760-61.   The *Dendrite* test accurately and cogently protects the First Amendment interests of the Doe Defendants and, as California district courts have adopted its holding, it should be applied here.   *See USA Techs. v. Doe*, 713 F. Supp. 2d 901, 906-07 (N.D. Cal. 2010) (using a "streamlined version of the *Dendrite* test"); *Highfields Capital Mgmt.*, 385 F. Supp. 2d at 974 n.6 (relying "most heavily" on *Dendrite* to determine whether to unmask Doe defendant).

### B.   Plaintiff's Proposed Discovery Cannot Survive First Amendment Scrutiny.

#### 1.   Plaintiff Has Not Made the Requisite Prima Facie Case.

In order to unmask anonymous defendants, a plaintiff must present *specific* evidence for *each* defendant.   At minimum, a plaintiff must present "competent evidence" regarding the investigative process which forms the basis for its allegations.   Because this information should obviously be available to the plaintiff, providing it as part of a prima facie showing is not unduly burdensome.   *See Dendrite*, 775 A.2d at 772; *see also SaleHoo Group, Ltd. v. ABC Co.*, 722 F. Supp. 2d 1210, 1214 (W.D. Wash. 2010); *Sinclair v. TubeSockTedD*, 596 F .Supp. 2d 128, 131 (D.D.C. 2009); *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 164 (D. Mass 2008); *Doe 1 v. Individuals*, 561 F. Supp. 2d 249, 254 (D. Conn. 2008); *Highfields Capital Management, L.P.*, 385 F. Supp. 2d at 974; *Sony Music Entertainment Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004).

In this case, Plaintiff has not provided sufficient prima facie evidence that any Doe Defendant infringed Plaintiff's copyright.   Plaintiff merely states that it "is

18

informed and believes" that each Doe Defendant "made use of one or more P2P networks to download a copy of the Motion Picture and distributed the Motion Picture to the general public, by making the Motion Picture available for distribution to other users of the P2P network."  Complaint at ¶ 8.  Plaintiff offers no further evidence to support this conclusory assertion.  Without such evidence, the Court must simply accept Plaintiff's word that its belief is based in an investigation conducted in a way that confirms actual copyright infringement, that such infringement was committed by the IP addresses submitted with its complaint, and that those addresses were each involved in file-sharing the Motion Picture.  Given the harm that can come from a false or erroneous accusation, this Court should require more.

> 2.   Defendants' First Amendment Interests Far Outweigh Plaintiff's "Need" for Their Identities.

Furthermore, a court must "balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed." *Dendrite*, 775 A.2d at 760-61.  Given the myriad procedural problems outlined above, the lack of transparency about the means by which the Plaintiff generated its list of "infringers," and the strength of the defendant's First Amendment right, the Court should prevent Plaintiff from taking further shortcuts.

> 3.   Plaintiff Must Ensure that Defendants Receive Notice of Its Pending Claim and Its Efforts to Unmask Them.

In addition to the substantive requirements identified above, the First Amendment also requires that the anonymous defendants be given adequate notice of the pending action and discovery. *Dendrite*, 775 A.2d at 760-61.  Accordingly, if a court permits discovery, it should require that any subpoena to Internet Service

Providers (ISPs) seeking the identity of anonymous Internet users be accompanied by a cover notice ordering the ISP:

> (a) to notify, within seven days of service of the subpoena, any person whose information has been sought that such information may be disclosed, and briefly describe their rights and options; and
>
> (b) to provide sufficient opportunity for the subscriber to exercise those rights, such as by moving to quash.

## CONCLUSION

Plaintiff has the right to seek legal redress for alleged copyright infringement, but it must follow the due process requirements applicable to all civil litigation. *Amicus* therefore respectfully urges this Court to sever the Doe Defendants. *Amicus* also suggests the Court dismiss the action and require Plaintiff to re-file individual cases against individual Doe Defendants in courts that can properly exercise jurisdiction. Given the uncertainty regarding the ownership of copyrights, *Amicus* also asks the Court to dismiss the case for lack of standing. Alternatively, should this case move forward, the Court should deny discovery of the identities of Doe Defendants as violative of their First Amendment right to anonymous speech.

Respectfully submitted,

Dated: June 1, 2011                    By  /s/ Matthew Zimmerman
                                       Matthew Zimmerman
                                       *mattz@eff.org*
                                       Corynne M. McSherry
                                       *corynne@eff.org*
                                       ELECTRONIC FRONTIER FOUNDATION
                                       454 Shotwell Street
                                       San Francisco, CA 94110
                                       T: (415) 436-9333
                                       F: (415) 436-9993
                                       www.eff.org

                                       Attorneys for *Amicus Curiae*

20